**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

INTERCOUNTY JUDICIAL SALES
CORPORATION, an Illinois Corporation

           Plaintiff,

vs.

COUNTY OF LAKE, ILLINOIS; MARK C.
CURRAN, JR, Lake County Sheriff; COUNTY
OF WILL, ILLINOIS; PAUL J. KAUPAS, Will
County Sheriff; and DUNN, MARTIN,
MILLER & HEATHCOCK, LTD., an Illinois
Corporation,

           Defendants.

Case No.:

Judge:

Magistrate Judge:

**VERIFIED COMPLAINT**

    NOW COMES the Plaintiff, INTERCOUNTY JUDICIAL SALES CORPORATION

("Intercounty"), by and through its attorneys, DYKEMA GOSSETT PLLC, and complains of

Defendants, COUNTY OF LAKE, ILLINOIS ("Lake County"); MARK C. CURRAN, JR., Lake

County Sheriff; COUNTY OF WILL, ILLINOIS ("Will County"); PAUL J. KAUPAS, Will

County Sheriff; and DUNN, MARTIN, MILLER & HEATHCOCK, LTD; as follows:

**INTRODUCTION**

    1.    This is an action for relief based on violations of constitutional rights under the

Contract Clause and the Fourteenth Amendment to the U.S. Constitution due to governmental

interference with private contractual relationships and unlawful exercise of governmental

authority in violation of the due process and equal protection clauses; violations of the Sherman

Act for the monopolization of judicial sales[1]; and for a declaratory action that by totally

---

[1] The terms "judicial sales" and "mortgage foreclosure sales" are used interchangeably in this
Complaint.

1

excluding private selling officers from being allowed to conduct judicial sales, the Defendants have acted in violation of the provisions of the Illinois Mortgage Foreclosure Law ("Law") permitting the appointment of private selling officers to handle judicial sales.

## THE PARTIES

2.     Plaintiff Intercounty is an Illinois corporation with its principal place of business in Chicago, Illinois.

3.     Defendant Will County is a body corporate and politic, and is a statutorily created local governmental entity responsible, among other things, for the operation of the Sheriff of Will County formed under the provisions of the County Code.

4.     Defendant Paul J. Kaupas, Sheriff of Will County, is an elected official and chief law enforcement officer of Will County whose budget is set and approved by Will County.

5.     Defendant Lake County is a body corporate and politic, and is a statutorily created local governmental entity responsible, among other things, for the operation of the Sheriff of Lake County formed under the provisions of the County Code.

6.     Defendant Mark C. Curran, Jr., Sheriff of Lake County, is an elected official and chief law enforcement officer of Lake County whose budget is set and approved by Lake County.

7.     Defendant Dunn, Martin, Miller & Heathcock, Ltd. ("Law Firm") is a law firm doing business as a corporation under the laws of the State of Illinois with offices in Joliet and Plainfield, Illinois.

## JURISDICTION AND VENUE

8.     The Claims in Counts I-VI are all based on federal constitutional issues relying on causes of action authorized under the Civil Rights Act, 42 U.S.C. §1983 or are federal antitrust

2

claims under the Sherman Act, 15 U.S.C. §§1 and 2, and authorized under §§4 and 16 of the

Clayton Act, 15 U.S.C. §§15 and 26. Therefore this Court has federal question jurisdiction under

28 U.S.C. §1331. The remaining claims for declaratory relief (Counts VII and VIII) seek to

determine that the custom and practice in each County of having the Sheriff exclusively conduct

all judicial sales exceeds the authority of the respective County and Sheriff under the Law is

within this Court's supplemental jurisdiction.

9.      Venue is proper in the Northern District of Illinois under 28 U.S.C. §1391 as the

Defendants reside in the Northern District; the Plaintiff resides in the Northern District; the

actions complained of occurred in the Northern District; and the likely witnesses necessary for

this case generally reside in the Northern District.

## BACKGROUND FACTS

10.     Prior to 1987, all judicial sales undertaken in mortgage foreclosure proceedings

were conducted by the sheriffs of the counties in which the property being foreclosed was

located or by the judges of the circuit court of the counties, except for Will County which for

years prior to 1987 had used a "Court's Auctioneer" system under which the Will County Sheriff

and the Law Firm shared responsibilities for judicial sales on foreclosed properties.

11.     The Illinois legislature enacted a comprehensive series of changes to procedures

governing foreclosures with the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101, *et*

*seq.*) (the "Law") effective July 1, 1987.

12.     The Law was enacted to ensure that the sale of foreclosed property in Illinois

would be accomplished in a manner that reduced costs and obtained a price more closely

approximating fair market value. To achieve these goals, the Law provided *inter alia* that any

party to a mortgage foreclosure can propose virtually unlimited alternatives to the then-mandated

sheriff's or judge's sale, including the appointment of private selling officers. The Law gave private selling officers the status of court officers.

13.     The history of the Law evidences the legislative intent to encourage competition by empowering private selling officers to conduct mortgage foreclosure sales. Testifying at the committee hearings regarding the passage of the Law, George H. Olsen, then Vice-Chairman of the Illinois State Bar Association IMFL Drafting Committee, explained that the underlying purpose of IMFL is:

> *to benefit consumers generally by ensuring that (i) the flow of mortgage funds in to the State are not inhibited . . . and (ii) when judicial sales become necessary the greatest sale price is realized . . . and reduce the cost which is necessarily passed on to all borrowers.*

14.     Additionally, the Law was intended to "put the real estate back into circulation as quickly as possible . . . (and to) move the foreclosure sale out of the back room into a real marketplace." Liss, Introduction to the Proposed Illinois Mortgage Foreclosure Act, 9 The Illinois Fund Concept 13, 14, 16 (1985).

15.     In 1989, Intercounty was formed and entered into the mortgage foreclosure sales business as a private selling officer (the "Business"). Since that time, several other firms have also entered the Business.

16.     The experience since the Law's implementation vindicated the drafters' goals for an expeditious and cost-effective method of selling foreclosed properties. Appointing private selling officers to conduct mortgage foreclosure sales has advanced the policy and goals of the Law by significantly reducing the costs of mortgage foreclosure for mortgage lenders and borrowers, and for the United States and government-sponsored enterprise lenders and mortgagees, including the Federal National Mortgage Association ("Fannie Mae") and the

4

Federal Home Loan Mortgage Corporation ("Freddie Mac"), the United States Department of

Housing and Urban Development ("HUD"), and the United States Department of Veteran

Affairs ("VA").

      17.     Since the enactment of the Law, private selling officers have been routinely

appointed to conduct mortgage foreclosure sales in counties throughout the state. Private selling

officers have been the preferred provider of this service for mortgage lenders, borrowers, and

governmental entities seeking foreclosures (i.e., Fannie Mae, Freddie Mac, HUD and the VA),

for several reasons:

      (a)    Private selling officers charge less than the county sheriffs. For example,
Intercounty charges $300 to conduct a mortgage foreclosure sale in Lake County;
the Lake County Sheriff charges $500.

      (b)    Private selling officers provide many more services for their fee than the county
sheriffs. Unlike the county sheriffs, private selling officers prepare all the
required notices and publications on behalf of the mortgagee and allow the
lender's bid to be submitted the day of the sale, in addition to entering the bid on
behalf of the lender. These services save litigants at least $500 in expense per
sale. In a typical transaction, the total cost savings to the mortgage lender using a
private selling officer often exceeds $800.

      18.     For nearly 20 years, mortgage lenders, borrowers, Fannie Mae, Freddie Mac,

HUD and the VA have consistently sought the appointment of private selling officers for

foreclosure sales in Illinois. For example, in 2008, mortgage lenders, borrowers, Fannie Mae,

Freddie Mac, HUD and the VA opted to use a private selling officer rather than the sheriff in

99% of their mortgage foreclosures in Lake County.

      19.     Because the costs associated with the use of a private selling officer are less than

the costs incurred when using the sheriff (often as little as half the cost) mortgage lenders,

borrowers, Fannie Mae, Freddie Mac, HUD and the VA have, in the aggregate, saved tens of

millions of dollars in foreclosure costs in the State of Illinois since the Law's enactment.

LISLE\152654.1
ID\BLGO - 019956\0999

20.     Both before and after the enactment of the Law, judges in most counties refused to conduct mortgage foreclosure sales and the county sheriffs became the only governmental actors conducting judicial sales in their respective counties.

21.     Intercounty became an alternative approach to judicial sales as it developed an efficient means of handling mortgage foreclosure sales, including performing notice and other functions that county sheriffs did not offer in their handling of such sales.  Intercounty was able to offer its services for less than one-half of the amount charged by the county sheriffs.

22.     Intercounty regularly provided its services in the Business to many attorneys who focused their practices on foreclosure proceedings and other law firms, as well as many lenders, governmental agencies, and other parties, and handled a large volume of judicial sales throughout most of the Chicago Metropolitan Area, as well as in many downstate counties.

23.     Intercounty has a near permanent relationship with many of the law firms handling a high volume of foreclosure actions, as well as with many major lenders, and conducts judicial sales for them throughout Illinois as the private selling officer under the Law. Intercounty also works with other law firms, lenders who are not as actively engaged in foreclosure proceedings, and other parties.

24.     Over time, Intercounty and other firms acting as private selling officers handled the vast majority of judicial sales as private selling officers.  These firms competed with each other for the Business and consistently offered lower costs and more timely sales than the area sheriffs.

25.     The Law permits the court, upon request of the plaintiff, to designate "an official or other person who shall be the officer to conduct the sale other than the one customarily designated by the court".  735 ILCS 5/15-1506(f)(3).

26.     As a result, the plaintiff in a foreclosure proceeding has the right to choose to use a private selling officer.  In most counties, plaintiffs' counsel or attorneys for other parties routinely sought the appointment of private selling officers in the vast majority of judicial sales, rather than use the local sheriffs.

27.     As a result, Intercounty was regularly engaged to conduct mortgage foreclosure sales for a set fee by law firms, lenders, and other parties which arrangement established a contractual relationship between Intercounty and these law firms, lenders, and other parties.

28.     Intercounty charges less than the county sheriffs throughout Cook County and the surrounding counties and can conduct a sale in as little as one day after the necessary publication, redemption, and advertisement periods have been satisfied. See 735 ILCS 5/15-1507(c)(2).  During periods of high volumes of foreclosure proceedings, some of the Sheriffs in Cook County and the surrounding counties have often taken weeks or months to conduct judicial sales after the requisite publication, redemption, and advertisement periods.

29.     Intercounty is recognized in most of the counties in Illinois as a private selling officer within the meaning of the Law, entitled to conduct judicial sales for any party choosing a private selling officer to conduct such sales.

30.     In 2013, the Illinois Supreme Court adopted an amendment to Supreme Court Rule 113(f), reiterating the Law's provision that allows any party to a foreclosure proceeding choose whether to use a private selling officer or the local sheriff by enacting the following:

> (2) Selling Officers.  Any foreclosure sale held pursuant to Section 15-1507 may be conducted by a private selling officer who is appointed in accordance with Section 15-1506(f)(3).

7

The Comments to this rule change noted that sheriffs tended to take too long and charge too much for judicial sales, resulting in extended vacancies of foreclosed homes and negatively impacting the neighborhoods in which these homes were located.

## FACTS SPECIFIC TO WILL COUNTY

31.     In Will County prior to 1987, there was a practice or custom of having the Will County Sheriff in collaboration with the Law Firm or its predecessor conduct all judicial sales. This procedure involved a collaboration between the Will County Sheriff and the Law Firm. The Will County Sheriff shared the charges of each judicial sale with the Law Firm. This practice or custom was referred to in Will County as the "Court Auctioneer" system.

32.     After the Law was enacted, the practice or custom in Will County did not change. The Will County Sheriff with the participation of the Law Firm handled virtually 100% of all judicial sales in the county.

33.     Sometime after 1987, the 12th Judicial Circuit adopted a local rule that memorialized the practice and custom of having the Court Auctioneer conduct all judicial sales. Rule 11.01, Twelfth Judicial Circuit.

34.     As a result of the practice or custom in Will County, private selling officers are effectively excluded from being appointed to conduct judicial sales.

35.     Will County's revenue from judicial sales in 2012 was $1,088,792.

36.     The cost of judicial sales in Will County charged by the Will County Sheriff is higher than the charges made by Intercounty or any other private firm engaged in the Business to their customers throughout northern Illinois.

8

37.     Generally, the Will County Sheriff only holds such sales once a week, while private selling officers can hold sales more frequently if allowed to operate the Business in Will County.

38.     Sometime in 2011, a representative of Intercounty and a representative of one of its competitors, Judicial Sales Corporation, met with the Will County Sheriff, the Will County Executive, a senior member of the Law Firm, and others to discuss opening the market for judicial sales to private competition in order to reduce the costs to law firms, lenders, and other parties and expedite the process of such sales. The County, Sheriff, and Law Firm rejected this request and continued to control the business of judicial sales.

39.     In 2012, the Will County Sheriff and the Law Firm conducted 3,183 sales in Will County. Intercounty conducted none.

40.     Intercounty is ready, willing and able to conduct judicial sales in Will County.

## FACTS SPECIFIC TO LAKE COUNTY

41.     By the mid-2000's, Intercounty and the other private firms in the Business conducted over 99% of all judicial sales in Lake County.

42.     In 2008, the Lake County Sheriff conducted approximately 25 judicial sales. Intercounty was appointed to conduct 1,161 judicial sales in that year and the other private firms in the Business were appointed to conduct 944 judicial sales.

43.     The Lake County Sheriff charged an average of $600 plus additional charges for other services per sale in 2008. Intercounty charged a flat fee of $300 for all judicial sales it conducted in Lake County in 2008, which fee included preparation and service of sale notices and other services not offered by the Lake County Sheriff. The other private firms in the Business also charged substantially less than the Lake County Sheriff.

9

44.     In 2009, the Lake County Board adopted Ordinance 09-1623 ("Ordinance") authorizing the Sheriff to establish a Judicial Sales Division in his office; to charge fees for specified services; and to authorize the expenditure of approximately $100,000 to hire two staff members to conduct judicial sales.

45.     Upon presentation of the draft Ordinance for approval in June of 2009 at meetings of the Law and Judicial Committee and the Financial and Administrative Committee of Lake County, Lake County announced that the Ordinance would authorize the Sheriff to conduct "all foreclosure sales in Lake County." The Ordinance was passed by the Lake County Board on June 9, 2009. A true and correct copy of the Ordinance is attached as Exhibit A to this Complaint.

46.     The day after the Ordinance was passed, the Lake County Sheriff announced that he expected to conduct 5,000 judicial sales the next year, representing all the judicial sales in Lake County for that year.

47.     The Lake County Sheriff charges $500 for each judicial sale.

48.     In 2010, Lake County budgeted over $1,000,000 in revenue from judicial sales.

49.     In 2010, the Lake County Sheriff scheduled 3,807 new judicial sales.

50.     The number of sales conducted by Intercounty in Lake County has declined in every year since the Ordinance was adopted.

51.     In 2012, the Lake County Sheriff scheduled 3,988 new judicial sales. Intercounty was appointed to conduct 13 judicial sales and the other private firms in the Business were appointed to conduct 6 judicial sales.

52.     From the first year after the adoption of the Ordinance, the Lake County Sheriff has taken over most of the Business to the point where the Lake County Sheriff has gone from an

10

insignificant number of judicial sales to almost 100% of all judicial sales and Intercounty and the other private companies engaged in the Business gone from almost 100% of the Business to virtually no Business in Lake County.

53.     Intercounty is ready, willing, and able to conduct judicial sales in Lake County.

## COUNT I – VIOLATION OF THE CONTRACT CLAUSE
## OF THE U.S. CONSTITUTION-WILL COUNTY

54.     Intercounty restates and incorporates by reference paragraphs 1 through 40 of this Complaint as though more fully set forth herein.

55.     Intercounty has a clearly ascertainable right and/or protectable interest in its near permanent relationships with the law firms, lenders, and other parties with which it regularly does business.

56.     The contractual relationship between Intercounty and such law firms, lenders, and other parties to conduct mortgage foreclosure sales as a private selling officer under the Law constitutes a property right protected by Article 1, §10 of the U.S. Constitution.

57.     The actions of Will County, the Will County Sheriff, and the Law Firm in operating the exclusive Court Auctioneer's system for judicial sales violates Intercounty's rights under Article 1, §10 of the U.S. Constitution in that these Defendants have interfered with Intercounty's ability to contract to conduct judicial sales in Will County.

58.     The violation of the constitutional right of contract constitutes irreparable injury.

59.     Intercounty has suffered irreparable injury by not being able to conduct judicial sales in Will County, as Intercounty has: (1) lost revenue from its existing law firms, lenders, and other parties in not being able to contract to conduct judicial sales in Will County; (2) the opportunity to obtain new business in Will County; and (3) lost reputation and standing in the

11

legal and lender community and the interruption of long-standing relationships with its law firms, lenders, and other parties and the expectation that these relationships would continue for many years.

60.     There is no adequate remedy at law to fully and adequately compensate Intercounty for the damages which it will suffer if the Defendants are allowed to continue infringe on Intercounty's constitutionally protected contract rights.

WHEREFORE, Plaintiffs move this Honorable Court for the following relief:

1.     A declaratory judgment that the custom and practice in Will County violates Intercounty's rights under Article 1, §10 of the U.S. Constitution;

2.     An order preliminarily and permanently enjoining Defendants from continuing the Court Auctioneer system and barring the Sheriff from conducting judicial sales with the assistance of the Law Firm.

3.     An award of monetary damages in favor of Intercounty and against Will County, the Will County Sheriff, and the Law Firm as allowed under 42 U.S.C. §1988 for the value of the lost revenue from law firms, lenders, and other parties which would have used Intercounty to conduct judicial sales, but for the practice and custom in Will County to exclude Intercounty from conducting judicial sales as a private selling officer;

4.     An award of costs and reasonable attorneys' fees as authorized under 42 U.S.C. §1988; and,

5.     Such other relief as this Court may deem just and reasonable.

12

## COUNT II – VIOLATION OF THE CONTRACT CLAUSE
## OF THE U.S. CONSTITUTION-LAKE COUNTY

61.     Intercounty restates and incorporates by reference paragraphs 1 through 30 and 41-53 of this Complaint as though more fully set forth herein.

62.     Intercounty has a clearly ascertainable right and/or protectable interest in its near permanent relationships with the law firms, lenders, and other parties for which it provides the Business.

63.     Intercounty has the right to contract with such law firms, lenders, and other parties as a private selling officer under the Act and this right constitutes a property right protected by Article 1, §10 of the U.S. Constitution.

64.     The actions of Lake County and the Lake County Sheriff in operating an exclusive system for judicial sales violates Intercounty's rights under Article 1, §10 of the U.S. Constitution in that these Defendants have interfered with Intercounty's ability to contract to perform judicial sales in Lake County.

65.     The violation of the constitutional right of contract constitutes irreparable injury.

66.     Intercounty has suffered irreparable injury by not being able to conduct judicial sales in Lake County, as Intercounty has:  (1) lost revenue from its existing law firms, lenders, and other parties in not being able to contract to do judicial sales in Lake County; (2) the opportunity to obtain new business in Lake County; and (3) reputation and standing in the legal and lender community and the interruption of long-standing relationships with its law firms, lenders, and other parties and the expectation that these relationships would continue for many years.

LISLE\152654.1
ID\BLGO - 019956\0999

67.     There is no adequate remedy at law to fully and adequately compensate Intercounty for the damages which it will suffer if the Defendants are allowed to continue to infringe on Intercounty's constitutionally protected contract rights.

WHEREFORE, Plaintiff moves this Honorable Court for the following relief:

1.     A declaratory judgment that the custom and practice in Lake County violates Intercounty's rights under Article 1, §10 of the U.S. Constitution;

2.     An order preliminarily and permanently enjoining Defendants from conducting a judicial sale in any proceeding where any party to the foreclosure proceeding requests the appointment of a private selling officer;

3.     An award of monetary damages to Intercounty and against Lake County and the Lake County Sheriff as allowed under 42 U.S.C. §1988 for the value of the lost revenue from law firms, lenders, and other parties which would have used Intercounty to conduct judicial sales, but for the practice and custom in Lake County to exclude Intercounty from conducting judicial sales as a private selling officer.;

4.     An award of costs and reasonable attorneys' fees as authorized under 42 U.S.C. §1988; and,

5.     Such other relief as this Court may deem just and reasonable.

**COUNT III-VIOLATION OF INTERCOUNTY'S RIGHTS AS PROTECTED BY THE DUE PROCESS AND EQUAL PROTECTION CLAUSES-WILL COUNTY**

68.     Intercounty restates and incorporates by reference paragraphs 1 through 40 of this Complaint as though more fully set forth herein.

69.     Will County, in conjunction with the Will County Sheriff and the Law Firm, are interfering with and taking away Intercounty's right under the Law to conduct judicial sales at

14

the request of the law firms, lenders, and other parties for which it regularly provides the services as a private selling officer in the other counties in Illinois, all in contravention of the due process and equal protection provisions of the Fourteenth Amendment to the U.S. Constitution.

70.    By adopting and implementing the custom and practice in Will County, Will County and Will County Sheriff, in conjunction with the Law Firm, have engaged in arbitrary and capricious actions that deny private selling officers, including Intercounty, the right to due process and equal protection of the laws.  Will County, the Will County Sheriff, and Law Firm have no authority under the Law to take over the Business from private selling officers, yet they have taken over the Business to the exclusion of private selling officers including Intercounty.

71.    The exclusion of private selling officers in Will County is treating all firms in the Business, including Intercounty, differently than others similarly situated in violation of the Equal Protection Clause.

72.    The joint actions of Will County, the Will County Sheriff, and the Law Firm are actions under color of law within the meaning of the Fourteenth Amendment to the U.S. Constitution.

73.    Intercounty has suffered or will continue to suffer irreparable injury if it cannot conduct judicial sales in Will County, violating Intercounty's constitutional rights.

74.    Intercounty will further suffer irreparable injury if it cannot conduct judicial sales in Will County as Intercounty will lose: (1) revenue from its existing base of law firms, lenders, and other parties in Will County; (2) referrals from existing law firms, lenders, and other parties for new Business; (3) reputation and standing in the legal and lender communities and the interruption of long-standing relationships with its law firm and lender clients and the

LISLE\152654.1
ID\BLGO - 019956\0999

expectation that these relationships would continue for many years; (4) the ability to sell the Business to new law firms, lenders, and other parties; and (5) good will.

75.     There is no adequate remedy at law to fully and adequately compensate Intercounty for the damages which they will suffer.

WHEREFORE, Plaintiff moves this Honorable Court for the following relief:

1.     A declaratory judgment that the custom and practice in Will County by the County, Will County Sheriff, and the Law Firm violates the Law and as such violates Intercounty's right to due process and equal protection of the laws under the Fourteenth Amendment.

2.     An order preliminarily and permanently enjoining Will County, the Will County Sheriff, and the Law Firm from conducting Court Auctioneer's sales when any party to a foreclosure proceeding chooses to have a private selling officer such an Intercounty conduct the judicial sale;

3.     An award of monetary damages to Intercounty and against Will County, the Will County Sheriff, and the Law Firm, as allowed under 42 U.S.C. §1988, for the value of the lost revenue resulting from being barred from the Business as the result of the custom and practice adopted by the Defendants;

4.     An award of costs and reasonable attorneys' fees, as authorized under 42 U.S.C. §1988; and,

5.     Such other relief as this Court may deem just and reasonable.

16

## COUNT IV-VIOLATION OF INTERCOUNTY'S RIGHTS AS PROTECTED BY THE DUE PROCESS AND EQUAL PROTECTION CLAUSES-LAKE COUNTY

76.     Intercounty restates and incorporates by reference paragraphs 1 through 30 and 41-53 of this Complaint as though more fully set forth herein.

77.     Lake County, in conjunction with the Lake County Sheriff, is interfering with and taking away Intercounty's right under the Law to conduct judicial sales for the law firms, lenders, and other parties it regularly serves in this capacity in the other counties in Illinois, all in contravention of the due process and equal protection provisions of the Fourteenth Amendment to the U.S. Constitution.

78.     By adopting and implementing the custom and practice in Lake County, the County and Lake County Sheriff have engaged in arbitrary and capricious actions that deny private selling officers, including Intercounty, the right to due process and equal protection of the laws as Lake County and the Lake County Sheriff have no authority under the Law to take over the Business from private selling officers, yet they have taken over the Business to the exclusion of private selling officers including Intercounty.

79.     The exclusion of private selling officers in Lake County is treating all private selling officers, including Intercounty, differently than others similarly situated in violation of the Equal Protection Clause.

80.     The joint actions of Lake County and the Lake County Sheriff are actions under color of law within the meaning of the Fourteenth Amendment to the U.S. Constitution.

81.     Intercounty will further suffer irreparable injury if it cannot conduct judicial sales in Lake County as Intercounty will lose: (1) revenue from its existing base of law firms and lenders for work that it could receive in Lake County; (2) referrals from existing law firms and

17

lenders for new Business; (3) reputation and standing in the legal and lender communities and the interruption of long-standing relationships with its law firm and lender clients and the expectation that these relationships would continue for many years; (4) the ability to sell the Business to new law firms, lenders, and other parties; and (5) good will.

82.     There is no adequate remedy at law to fully and adequately compensate Intercounty for the damages which it will suffer.

WHEREFORE, Plaintiff moves this Honorable Court for the following relief:

1.     A declaratory judgment that the Ordinance as implemented by the Lake County Sheriff violates the Law and as such violates Intercounty's right to due process and equal protection of the laws under the Fourteenth Amendment.

2.     An order preliminarily and permanently enjoining Lake County Sheriff from conducting judicial sales when any party to a foreclosure proceeding has asked for the appointment of a private selling officer;

3.     An award of monetary damages to Intercounty and against Lake County and the Lake County Sheriff, as allowed under 42 U.S.C. §1988, for the value of the lost revenue resulting from being virtually from the Business as the result of the custom and practice adopted by the Defendants;

4.     An award of costs and reasonable attorneys' fees, as authorized under 42 U.S.C. §1988; and,

5.     Such other relief as this Court may deem just and reasonable.

## COUNT V-MONOPOLIZATION (§2 OF THE SHERMAN ACT)-WILL COUNTY

83.     Plaintiff incorporates by reference and restates paragraphs 1 through 40 of this Complaint as though more fully set forth herein.

18

## The Relevant Market

84.     The relevant product market is the market for the Business in Will County.

85.     The relevant geographic market consists of the boundaries of Will County.

86.     The relevant geographic market and relevant product market herein are referred to as the "Relevant Market."

## Injury to Competition and Damages to Intercounty

87.     Intercounty has been injured in its business and property by reason of the fact that Will County, in concert with the Will County Sheriff and the Law Firm, have unlawfully precluded Intercounty and other private selling officers from competing to provide the Business in Will County.

88.     The acquisition of a monopoly in the Relevant Market has been secured by illegal means as the Law encourages the appointment of private selling officers and the recent Supreme Court Rule reiterates the right of any party to a mortgage foreclosure proceeding to choose private selling officers, including Intercounty, to conduct judicial sales.

89.     As a result of the wrongful actions alleged herein, the cost of judicial sales has increased for many law firms, lenders, and other parties from as low as Three Hundred Dollars ($300) per sale to as much as Six Hundred Dollars ($649.75) or more per sale as well as transferred costs to the parties that would be absorbed by Intercounty.

90.     The activities of Will County, the Will County Sheriff, and the Law Firm have impacted the substantial and uninterrupted flow of products, services, contracts, and claims in interstate commerce and the transfer of substantial sums of money across state lines.  In

19

particular, the provision of the services of private selling officers is available to any party

regardless of where located in the United States to have such private selling officers conduct

judicial sales in any county in Illinois, but may not do so in Will County.

91.     These Defendants' actions threaten to substantially adversely impact the flow of

such interstate commerce by, among other things, substantially impacting the price, quality,

timeliness, and quantity of services in the Relevant Market.

92.     The activities of the Defendants have proximately caused injury to Intercounty in

its business and property.

93.     The actions of the Defendants threaten to cause loss and/or damages to

Intercounty by unlawfully precluding it from competing in the Relevant Market.

94.     Unless restrained by this Court, such activities threaten further losses and

damages to Intercounty.

95.     Will County, the Will County Sheriff, and the Law Firm have effectively

excluded private selling officers from conducting their business in the Relevant Market.

96.     There is no clearly articulated and affirmatively expressed State policy under the

Law to authorize Will County, the Will County Sheriff, and the Law Firm to displace

competition in the Relevant Markets, or establish a monopoly and extract monopoly profits for

themselves.

97.     There is a clearly articulated and affirmatively expressed State policy under the

Law that private selling officers like Intercounty are entitled to offer their services in any county,

including in Will County.

98.     Although the Law encourages the use of private selling officers to expedite the

judicial sales process and reduce costs of sale, Will County, the Will County Sheriff, and the

20

Law Firm have undermined these goals by establishing exclusive procedures that both often lengthen the process of judicial sales and routinely increase the costs of judicial sales.

99.     Private selling officers, including Intercounty, are authorized by the Law to conduct judicial sales anywhere in the State of Illinois, including in Will County.

100.     There is no authority under the Law for the Will County Sheriff to contract with the Law Firm to engage in the Court Auctioneer's system.

101.     Will County, in conjunction with the Will County Sheriff and the Law Firm, is interfering with and taking away Intercounty's rights under the Law to provide the Business to existing law firms, lenders, and any other parties, as well as new law firms, lenders or any other parties who want Intercounty to conduct judicial sales in Will County.

102.     The establishment of the exclusive control over the Business in Will County with the active participation of the Law Firm constitutes exclusionary behavior. The purpose of these actions is intended to create a monopoly.

103.     The actions of Will County, the Will County Sheriff, and the Law Firm constitute attempted monopolization of the Relevant Market, in violation of §2 of the Sherman Act (15 U.S.C. §2).

104.     The active participation of the Law Firm with the Will County Sheriff constitutes a conspiracy to monopolize the Relevant Market, in violation of §2 of the Sherman Act. (15 U.S.C. §2).

105.     Intercounty has been substantially injured in its business and property by the acts of the Defendants as Intercounty has lost all of its Business due to perpetuation of the Court Auctioneer's system in Will County after the 1987 amendments to the Act.

LISLE\152654.1
ID\BLGO - 019956\0999

106. Intercounty has suffered irreparable injury by being precluded from competing in the Relevant Market for the Business.

107. Will County and the Will County Sheriff are immune from antitrust damages under the Local Government Antitrust Immunity Act, 15 U.S.C. §§34-36, and therefore Intercounty does not have an adequate remedy at law against the Will County and the Will County Sheriff.

WHEREFORE, the Plaintiff moves this Honorable Court for the following relief:

1. The entry of an injunction against Will County, the Will County Sheriff, and the Law Firm prohibiting them from operating the Court Auctioneer's system and prohibiting the Sheriff from accepting assignments for judicial sales where any party to a foreclosure proceeding have sought the appointment of private selling officer to conduct the judicial sale;

2. An award of monetary damages against the Law Firm in the amount of Intercounty's lost profits in Will County from Intercounty's inability to obtain the Business due to the Law Firm's participation in an illegal monopoly and treble that amount as authorized under Section 4 of the Clayton Act, 15 U.S.C., § 15(a);

3. An award against Will County and the Will County Sheriff and the Law Firm for Intercounty's attorney's fees and costs as allowed under the Clayton Act, 15 U.S.C. § 15(a); and,

4. Such other relief as this Court may deem just and reasonable.

## COUNT VI-MONOPOLIZATION (§2 OF THE SHERMAN ACT)-LAKE COUNTY

108. Plaintiff incorporates by reference and restates paragraphs 1 through 30 and 41-53 of this Complaint as though more fully set forth herein.

22

LISLE\152654.1
ID\BLGO - 019956\0999

### The Relevant Market

109.    The relevant product market is the market for the Business in Lake County.

110.    The relevant geographic market consists of the boundaries of Lake County.

111.    The relevant geographic market and relevant product market herein are referred to as the "Relevant Market."

### Injury to Competition and Damages to Intercounty

112.    Lake County and Lake County Sheriff, in exercising a monopoly in conducting virtually all of the Lake County mortgage foreclosure sales, exceed the power granted to Lake County and the Lake County Sheriff, either expressly or by necessary implication under Illinois statute or the Illinois Constitution.

113.    Lake County and the Lake County Sheriff's creation and exercise of a monopoly in the conduct of mortgage foreclosure sales in Lake County is not undertaken pursuant to any state policy and is, in fact, contrary to the express intent and purpose of the Law.

114.    Intercounty has been injured in its business and property by reason of the fact that Lake County, in concert with the Lake County Sheriff, have unlawfully precluded Intercounty and other private selling officers from competing to provide the Business to parties requiring the services of private selling officers in Lake County as permitted under the Law.

115.    The acquisition of a monopoly in the Relevant Market has been secured by illegal means as the Law facilitates the appointment of private selling officers and the recent Supreme Court Rule reiterates the right of parties to foreclosure proceedings to choose private selling officers to conduct judicial sales.

23

116.    As a result of the wrongful actions alleged herein, the cost of judicial sales has increased for many law firms, lenders, and other parties to foreclosure proceedings from as low as Three Hundred Dollars ($300) per sale to as much as Five Hundred Dollars ($500) or more per sale, as well as transferred costs to the parties that would be absorbed by Intercounty.

117.    The activities of Lake County and the Lake County Sheriff have impacted the substantial and uninterrupted flow of products, services, contracts, and claims in interstate commerce and the transfer of substantial sums of money across state lines.  In particular, the provision of the services of private selling officers is available to any law firm, lender, or other party regardless of where they are located throughout the United States for judicial sales in Illinois, but not in Lake County.

118.    The monopoly created and exercised by Lake County and Lake County Sheriff in the conduct of mortgage foreclosure sales in Lake County poses a continuing threat to free, unrestrained and competitive interstate trade.

119.    These Defendants' actions threaten to substantially adversely impact the flow of such interstate commerce by, among other things, substantially impacting the price, quality, timeliness, and quantity of services in each Relevant Market.

120.    The activities of these Defendants have proximately caused injury to Intercounty in its business and property.

121.    The actions of these Defendants threaten to cause loss and/or damages to Intercounty by unlawfully precluding it from competing for the Business in the Relevant Market.

122.    Unless restrained by this Court, such activities threaten further losses and damages to Intercounty.

24

123.    Prior to the adoption of the Ordinance by Lake County, private selling officers actively competed for the Business in Lake County. All parties to foreclosure proceedings greatly benefitted from this competition, as it resulted in competitive prices, superior customer service, quality enhancements, and many choices for consumers. The drafting and publication of the notice of sale was one indication of the innovation that Intercounty and other private selling officers brought to their customers.

124.    By adopting the Ordinance and implementing the custom and practice of having the Lake County Sheriff conduct virtually all judicial sales, Lake County and the Lake County Sheriff have barred Intercounty and all other private selling officers from the Relevant Market.

125.    These Defendants have effectively excluded private selling officers from conducting their business in the Relevant Market.

126.    There is no clearly articulated and affirmatively expressed State policy under the Act to authorize Lake County and the Lake County Sheriff to displace competition in the Relevant Markets, or establish a monopoly and extract monopoly profits for themselves.

127.    There is a clearly articulated and affirmatively expressed State policy under the Act that private selling officers like Intercounty are entitled to offer their services in any county, including in Lake County.

128.    Although the Law encourages the use of private selling officers to expedite the judicial sales process and reduce costs of sale, Lake County and the Lake County Sheriff have undermined these goals by establishing exclusive procedures that both often lengthen the process of judicial sales and routinely increase the costs of judicial sales.

129.    Private selling officers, including Intercounty, are authorized by the Law to conduct judicial sales anywhere in the State of Illinois, including in Lake County.

25

130. Lake County, in conjunction with the Lake County Sheriff, is interfering with and taking away Intercounty's rights under the Law to provide the Business to existing law firms and lenders as well as new law firms and lenders or other parties who want Intercounty to handle judicial sales in Lake County.

131. The establishment of the exclusive control over the Business in Lake County constitutes exclusionary behavior. The purpose of these actions is intended to create a monopoly.

132. The Defendants' actions constitute attempted monopolization of the Relevant Market, in violation of §2 of the Sherman Act (15 U.S.C. §2).

133. Intercounty has been substantially injured in its business and property by the acts of the Defendants as Intercounty has lost virtually all of its Business in Lake County due to implementation of the Ordinance in Lake County.

134. Intercounty has suffered irreparable injury by being precluded from competing in the Relevant Market for the Business.

135. Lake County and the Lake County Sheriff are immune from antitrust damages under the Local Government Antitrust Immunity Act, 15 U.S.C. §§34-36, and therefore Intercounty does not have an adequate remedy at law against Lake County and the Lake County Sheriff.

WHEREFORE, the Plaintiff moves this Honorable Court for the following relief:

1. The entry of an injunction against Lake County and the Lake County Sheriff barring them from continuing to enforce the Ordinance.

LISLE\152654.1
ID\BLGO - 019956\0999

2.     An award in favor of Intercounty and against Lake County and the Lake County Sheriff for Intercounty's attorney's fees and costs as allowed under the Clayton Act, 15 U.S.C. § 15(a); and,

3.     Such other relief as this Court may deem just and reasonable.

## COUNT VII-DECLARATORY JUDGMENT UNDER 735 ILCS § 5/2-701-WILL COUNTY

136.     Plaintiffs restate and incorporate by reference paragraphs 1 through 40 of this Complaint as though more fully set forth herein.

137.     Will County is a non-home rule unit of government deriving all its authority from those statutory grants of the State of Illinois.

138.     The Law provides that in relevant part that a party may seek "special matters" in the complaint or by separate motion that "an official or other person who shall be the officer to conduct the sale other than one customarily designated by the court." (735 ILCS § 5/15-1506(f)(3)). Intercounty and other firms in the Business are such officers identified in the Law.

139.     The benefits of using private selling officers led the Illinois Supreme Court to reinforce the purpose of § 1506(f)(3) in its adoption of Sup.Ct. Rule 113(f)(2).

140.     Intercounty has routinely acted as a private selling officer under subsection 1506(f)(3) in most counties throughout the State and no sales have been denied confirmation based on any failure of Intercounty to comply with the Law.

141.     Many law firms, lenders and other parties who regularly seek Intercounty's appointment in other counties  would use Intercounty as their private selling officer in Will County, but for the custom and practice in Will County.

LISLE\152654.1
ID\BLGO - 019956\0999

142. The Act does not vest Will County, the Will County Sheriff, and the Law Firm with the authority to adopt the custom or practice of conducting virtually all of the judicial sales in Will County to the exclusion of private selling officers.

WHEREFORE, Plaintiff moves this Honorable Court for the following relief:

1. A declaratory judgment that the actions of these Defendants are in violation of the Law and their exclusion of all judicial sales by private selling officers is in contravention of the Law; and

2. Such other relief as this Court may deem just and reasonable.

## COUNT VIII-DECLARATORY JUDGMENT UNDER ILCS § 5/2-701-LAKE COUNTY

143. Plaintiff restates and incorporates by reference paragraphs 1 through 30 and 41-53 of this Complaint as though more fully set forth herein.

144. Lake County is a non-home rule unit of government deriving all its authority from those statutory grants of the State of Illinois.

145. The Law provides in relevant part that any party may seek "special matters" in the complaint or by separate motion that "an official or other person who shall be the officer to conduct the sale other than one customarily designated by the court.' (735 ILCS § 5/15-1506(f)(3)). Intercounty and other firms in the Business routinely conduct judicial sales as officers under the Law.

146. Many law firms, lenders, and other parties who regularly seek the appointment of Intercounty would use Intercounty as their private selling officers in Lake County, but for the adoption and implementation of the Ordinance.

147. The benefits of using private selling officers led the Illinois Supreme Court to reinforce the purpose of subsection 1506(f)(3) in its adoption of Sup.Ct. Rule 113(f)(2).

28

148.    Intercounty has routinely acted as a private selling officer under § 1506(f)(3) in most counties throughout the State and no sales have been denied confirmation based on the failure of Intercounty to comply with the Law.

149.    Many law firms and lenders who are regular customers of Intercounty would use Intercounty as their private selling officers, but for the adoption and implementation of the Ordinance.

150.    The Law does not vest Lake County and the Lake County Sheriff with the authority to adopt the custom or practice of exclusively conducting judicial sales to the exclusion of private selling officers like Intercounty.

WHEREFORE, Plaintiff moves this Honorable Court for the following relief:

1.    A declaratory judgment that the actions of these Defendants are in violation of the Law and their control over the conduct of judicial sales to the virtual exclusion of private selling officers is in contravention of the Law; and

2.    Such other relief as this Court may deem just and reasonable.

Dated:  December 20 , 2013

Respectfully submitted,

| Bruce L. Goldsmith  ARDC 0996939<br>David J. Bressler – ARDC 6182549<br>DYKEMA GOSSETT PLLC<br>4200 Commerce Court, Suite 300<br>Lisle, Il  60532<br>630- 245-0400<br><br>*Attorneys for Intercounty* | INTERCOUNTY JUDICIAL SALES CORPORATION<br><br><br>By: Bruce L. Goldsmith<br>        One of its Attorneys |
| --- | --- |

29

STATE OF ILLINOIS    )
                     ) SS.
COUNTY OF            )

## VERIFICATION

ANDREW D. SCHUSTEFF, President of INTERCOUNTY JUDICIAL SALES CORPORATION, being duly sworn on oath states that to the best of his knowledge, the information set forth in the foregoing Complaint is true and correct and that he has the authority to make this verification on behalf of himself and INTERCOUNTY JUDICIAL SALES CORPORATION.

_____
Andrew D. Schusteff, President
Intercounty Judicial Sales Corporation

Subscribed and Sworn to
before me this 16th day
of December, 2013.

_____
NOTARY PUBLIC

OFFICIAL SEAL
ANGELA C STEPHEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/10/17

30