IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERCOUNTY JUDICIAL SALES CORPORATION, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) | No.  13 C 9093 |
| v. | ) ) | Judge Robert W. Gettleman |
| COUNTY OF LAKE, ILLINOIS; MARK C. CURRAN, JR., Lake County Sheriff; COUNTY OF WILL, ILLINOIS; PAUL J. KAUPAS, Will County Sheriff; and DUNN, MARTIN, MILLER & HEATHCOCK, LTD., an Illinois corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Intercounty Judicial Sales Corporation has brought an eight count complaint against defendants: the County of Lake, Illinois and Lake County Sheriff Mark C. Curran, Jr. (the "Lake County defendants"); the County of Will and Will County Sheriff Paul J. Kaupas (the "Will County defendants"); and the law firm of Dunn, Martin, Miller & Heathcock, Ltd. ("DMMH") alleging various constitutional claims (Counts I through IV), illegal monopolization under § 2 of the Sherman Act (15 U.S.C. § 2) (Counts V and VI), and claims for declaratory relief (Counts VII and VIII).  The gist of plaintiff's complaint is that defendants are somehow excluding plaintiff from being appointed to act as a judicial sales officer pursuant to the Illinois Mortgage Foreclosure Act ("MFA") 735 ILCS 5/15-1506(f)(3) in both Lake and Will Counties. The Lake County defendants, Will County defendants, and DMMH have each filed separate motions to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, raising various pleading deficiencies and immunity arguments.  The court has identified a more basic problem with plaintiff's complaint, however: it fails to allege an injury fairly traceable to any of

defendants' actions that can be redressed by a favorable decision. Plaintiff thus lacks Article III standing to sue defendants and the complaint is dismissed for lack of subject matter jurisdiction.

## BACKGROUND[1]

According to the complaint, prior to 1987 all judicial sales undertaken in mortgage foreclosure actions throughout Illinois were conducted by the sheriffs of the counties in which the foreclosed properties were located, or by the judges of the circuit courts in those counties. The lone exception was Will County, in which sales were conducted under a "Courts' Auctioneer" system, pursuant to which the Will County Sheriff and DMMH or its predecessor shared responsibilities.

In 1987 the MFA was amended, according to plaintiff, to "ensure that the sale of foreclosed property in Illinois would be accomplished in a manner that reduced cost and obtained a price more closely approximating fair market value." In particular, 735 ILCS 5/15-1506 was amended to add subsection (f), which provides in relevant part (emphasis added):

> (f) Special Matters in Judgment. Without limiting the general authority and powers of the court, special matters may be included in the Judgment of Foreclosure <u>if sought by a party in the complaint or by separate motion</u>. Such matters may include, without limitation:
>
> *     *     *
>
> 3.) an official or other person who shall be the officer to conduct the sale other than the one customarily designated by the court . . ..

Plaintiff alleges that since the amendment, private selling officers have been routinely appointed to conduct mortgage foreclosure sales in counties throughout the state, including Lake

---

[1]The following facts are taken from plaintiff's complaint and are assumed to be true for purposes of these motions to dismiss. <u>See</u> <u>Murphy v. Walker</u>, 51 F. 3d 714, 717 (7th Cir. 1996).

2

County.  In 2008 "mortgage lenders, borrowers, Fannie Mae, Freddie Mac, HUD and the VA opted to use private selling officers rather than the sheriff in 99% of their mortgage foreclosures in Lake County."

Plaintiff claims to have a "near permanent relationship with many of the law firms handling a high volume of foreclosure actions, as well as with many major lenders, and conducts judicial sales through them throughout Illinois as the private selling officer."  Over time plaintiff "and other firms acting as private selling officers handled the vast majority of judicial sales as private selling officers."

By the mid-2000(s) plaintiff and other private firms conducted over 99% of all judicial sales in Lake County.  In 2008 the Lake County Sheriff conducted 25 sales compared to 1,161 conducted by plaintiff and 944 conducted by other private firms.

In 2009, the Lake County Board adopted Ordinance 09-1623 authorizing the Sheriff to establish a Judicial Sales Division in his office, to charge fees for specialized services and to authorize the expenditure of approximately $100,000 to have two staff members conduct judicial sales.  The staff summary to the ordinance indicates that "currently most judicial sales are conducted by two Cook County companies and potential purchasers must travel to many different locations to participate in the judicial sale.  The Sheriff and the Courts have received complaints and wish to centralize the process."  In 2010 the Lake County Sheriff scheduled 3,807 sales.  In 2012 the Sheriff scheduled 3,988 such sales.  Plaintiff was appointed to conduct 13 sales and other private firms only 6 sales in 2012.

Prior to 1987 the Will County Sheriff, in collaboration with DMMH, conducted all judicial sales.  This custom is referred to in Will County as the "Court Auctioneer" system.

According to plaintiff, this practice did not change after 1987, with the Court Auctioneer

handling "virtually 100% of all judicial sales in the county."  Sometime after 1987 the Twelfth

Judicial Circuit Court adopted a Local Rule ( 11.01) that provides in relevant part:

> A.  Assignment to Court's Auctioneer of Mortgage Foreclosure Sales.  Unless
> otherwise ordered by the Court all Judicial and Foreclosure Sales of Real Estate
> ordered as a result of a foreclosure of a mortgage shall be assigned to the Court's
> Auctioneer who acts on behalf of both the Sheriff of Will County and the Circuit
> Court. . . .

According to plaintiff, this practice or custom of using the Court's Auctioneer effectively

excludes private selling officers such as plaintiff from being appointed to conduct judicial sales.

### DISCUSSION

As noted above, all of plaintiff's claims, whether based on the Constitution or the

Sherman Act, rest on its allegation that defendants have somehow prevented it from being

appointed to act as a judicial sales officer in Lake and Will Counties.  But, as all defendants

point out, the appointment of a judicial sales officer is made by the circuit courts according to

state law.  Under §15-1507(b) of the MFA, a sale may be conducted by any judge or sheriff.

Section 1506(f)(3) allows (but does not compel) the court to appoint someone "other than the

one commonly designated by the Court," if requested to do so either in the complaint or by

motion.  Thus, plaintiff's complaint is with the two circuit courts' decisions to appoint the

county sheriffs rather than plaintiff as their judicial sales officers, or with the plaintiffs in the

foreclosure actions that could have (but apparently had not) requested that plaintiff be

appointed.[2]

---

[2]Indeed, plaintiff has failed to allege that any party to a foreclosure proceeding in either
county has requested the circuit court to appoint plaintiff, or that any such request has been

(continued...)

Standing is the "irreducible constitutional minimum" required to bring a case in federal court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Art. III of the Constitution," and "serv[es] to identify those disputes which are appropriately resolved through the judicial process." Id. Standing contains three elements: (1) plaintiff must have suffered an injury in fact, or an invasion of a legally protectible interest which is both concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 560-61 (quotations and citations omitted).

In the instant case, even assuming that plaintiff has suffered an injury in fact (which is not a given), that injury is not fairly traceable to defendants. Defendants are not responsible for the appointment of judicial sales officers. That decision is made by the circuit court in accordance with Illinois law. The Sheriffs and DMMH are simply following court orders, something they of course are required to do. In re: Marriage of Newton, 2011 Il. App. (1st) 090683 ¶ 62 (1st Dist. 2011)("Persons subject to the order of a court having jurisdiction must obey the order until it is reversed by a reviewing court or set aside or modified.").

---

[2](...continued)
denied.

Thus, no matter how plaintiff attempts to spin the facts of its case, its injury is not "fairly trace[able] to . . . defendant[s]." Lujan, 504 U.S. at 560.  Instead, plaintiff's injury is the "result of [the independent action of some third party not before the court" – namely the action of the judges of the circuit courts who have appointed sheriffs as the judicial sales officer, or the plaintiffs in the foreclosure actions that failed to request the courts to appoint plaintiff.  See Johnson v. Merrill Lych, Pierce, Fenner & Smith, 719 F.3 601, 607 (7th Cir. 2013) (plaintiff lacked standing because his injury was the result of an independent action of a judge on the Wayne County Circuit Court).

Because plaintiff cannot trace its injury to defendants, it cannot meet the second requirement for Article III standing.  Without standing this court has no subject matter jurisdiction to adjudicate plaintiff's claims, and the complaint is dismissed.[3]

## CONCLUSION

For the reasons set forth above all defendants' motions to dismiss (Docs. 20, 25, 28) are granted and the complaint is dismissed for lack of subject matter jurisdiction.

**ENTER:** **August 7, 2014**

Robert W. Gettleman
United States District Judge

---

[3]The court notes that in the voluminous papers filed by the parties, they address a number of issues, such as immunity and the Rooker-Feldman doctrine, that the court does not reach, given its conclusion that it lacks subject matter jurisdiction.